LANDAU, S. J.
*285 Defendant appeals a judgment of conviction for menacing. ORS 163.190. The evidence against her included a recording of threats that she made to her neighbor during a conversation outside the neighbor's house. The conversation was recorded on a cell phone from a window in the neighbor's house. Defendant moved to exclude the recording, arguing that the recording violated the statutory prohibition against obtaining conversations without the knowledge of all parties to the conversation. The trial court denied the motion. On appeal, defendant argues that the trial court erred in denying her motion to exclude the recording. The state argues that the trial court did not err, because the recording was subject to a statutory exception for obtaining conversations by certain persons "in their homes." ORS 165.540(3). Defendant replies that the exception applies only when conversations-not the recordings themselves-take place in the recorder's home. We agree with the state that the statutory exception to the prohibition against recording without consent applies when the act of recording occurs in the home, not when the conversation takes place there. Accordingly, the trial court did not err in denying defendant's motion, and we affirm.
The relevant facts are not in dispute. Defendant lived next to Coleman and his stepsister, Quiros. Defendant and her neighbors had an ongoing dispute about the property line between their two homes. On one occasion, defendant and Coleman stood at the boundary between their homes and argued *100 about the matter. Quiros, who was upstairs in a second-story bedroom at the time, heard "some commotion" coming from outside. She pointed her cell phone at the bedroom window and recorded the conversation between defendant and Coleman. During the conversation, defendant threatened to shoot Coleman. Neither defendant nor Coleman was aware that Quiros was recording the conversation.
Defendant was charged with menacing, based on her threat to shoot Coleman. Before trial, defendant moved to exclude the recording of the conversation with Coleman. She argued that, because she had been unaware that Quiros *286 had recorded the conversation, the recording violated ORS 165.540(1), which prohibits "obtaining" the contents of a conversation without providing notice to all participants. And, because Quiros had recorded the conversation in violation of ORS 165.540(1), she argued, the recording was inadmissible under ORS 41.910(1), which provides that recordings made in violation of the law are not admissible evidence. The trial court questioned whether a face-to-face interaction qualified as the type of "conversation" that the statute protected. The state argued that, even if Quiros recorded a "conversation" within the meaning of ORS 165.540(1), the recording was lawful under an exception that applies when "subscribers or members of their family perform the acts prohibited" in that statute "in their homes." ORS 165.540(3). The trial court denied defendant's motion without explaining whether it did so because defendant's interaction with Coleman was not a "conversation" or because the recording of the interaction was permitted under the exception to the statutory prohibition.
On appeal, defendant argues that her face-to-face interaction with Coleman amounted to a "conversation" within the meaning of ORS 165.540(1) and so could not lawfully be recorded without her knowledge. The state does not dispute that the interaction between defendant and Coleman was a "conversation" within the meaning of the statute. It argues instead that the recording was permissible under the "homeowner's exception" of ORS 165.540(3). In reply, defendant argues that "the homeowner's exception does not apply because the conversation occurred outside the home." According to defendant, the legislative history of what became ORS 165.540(3) reveals that the legislature intended the exception "to allow a subscriber to listen to or record communication that occurs on telephone lines within their own home." It follows, she argues, that the exception should also be limited to face-to-face conversations that occur in the home.
The parties' arguments thus raise an issue of statutory construction: Does the exception in ORS 165.540(3) apply only when the recorded conversation occurs in the home or when the recording occurs in the home, regardless of where the conversation occurs? That issue we review as a *287 matter of law, in accordance with the interpretive principles set out in State v. Gaines , 346 Or. 160, 169-72, 206 P.3d 1042 (2009), and PGE v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993).
ORS 165.540(1) provides that, subject to several enumerated exceptions:
"[A] person may not
"(a) Obtain or attempt to obtain the whole or any part of a telecommunication or a radio communication to which the person is not a participant, by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by at least one participant.
"(b) Tamper with the wires, connections, boxes, fuses, circuits, lines or any other equipment or facilities of a telecommunication or radio communication company over which messages are transmitted, with the intent to obtain unlawfully the contents of a telecommunication or radio communication to which the person is not a participant.
"(c) Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if not all participants in the conversation are specifically informed that their conversation is being obtained."
*101 ORS 165.535(1) defines a "conversation" as "the transmission between two or more persons of an oral communication which is not a telecommunication or a radio communication." The Supreme Court has concluded that the term applies to face-to-face interactions. State v. Jones , 339 Or. 438, 444, 121 P.3d 657 (2005) (applying the statute to criminal defendant's statements during police interviews).
Paragraphs (a) and (b) of ORS 165.540(1) thus prohibit obtaining or attempting to obtain the contents of a telecommunication or radio communication without the consent of one of the participants. Paragraph (c) prohibits obtaining or attempting to obtain the contents of a conversation-that is, an oral communication other than a telecommunication or radio communication-without the knowledge of all participants.
*288 ORS 165.540 lists the several exceptions to the general prohibition in subsection (1). One of those exceptions is stated in ORS 165.540(3) : "The prohibitions in subsection (1)(a), (b) or (c) * * * do not apply to subscribers or members of their family who perform the acts prohibited in subsection (1) of this section in their homes."
That "homeowner's exception" applies to "subscribers or members of their family." Defendant does not argue that the person who recorded her conversation with Coleman-Quiros-was not a "subscriber" or a "member of [a subscriber's] family" within the meaning of the statute. That leaves the issue that we have identified, namely, whether the statute requires that the conversation being recorded must have occurred in the home.
The text of the statute permits only one answer. It states that "[t]he prohibitions in subsection (1)(a), (b) or (c) * * * do not apply to subscribers or members of their family who perform the acts prohibited in subsection (1) * * * in their homes." What must occur "in their homes" are "the acts prohibited in subsection (1)." The only acts prohibited in subsection (1) are recording or listening to-"[o]btain[ing] * * * by means of any device, contrivance, machine or apparatus"-without notice. Nothing in the wording of ORS 165.540(3) can be plausibly read to state an exception based on where the conversation itself takes place.
The legislative history of ORS 165.540(3) is not to the contrary. What is now ORS 165.540 was originally adopted in 1955. Or. Laws 1955, ch. 675, § 2. Introduced as Senate Bill (SB) 165, the bill included only what is now paragraphs (a) and (b) of ORS 165.540(1). That is, it prohibited only obtaining or tampering with telecommunications or radio communications; there was no prohibition against recording face-to-face communications.
During a hearing on the bill before the Senate Committee on Judiciary, the subject of exceptions to the prohibition was briefly discussed. One senator proposed an exception, stating that "[t]his prohibition shall not apply to the subscribers of a telephone in his home." Minutes, Senate Committee on Judiciary, SB 165, Apr. 13, 1955, 2. A second senator proposed a different exception, stating that *289 this prohibition shall not "apply to the ordinary use of telephones or any extensions thereof in the subscriber[']s home or business." Id. at 3. A third senator proposed yet a different exception, stating that "[t]his prohibition does not apply to extensions of the subscriber's telephones." Id. There is no record of any discussion concerning any of those proposed amendments.
At a hearing of the Senate Committee on Judiciary the following week, the first senator to propose an exception at the previous hearing expanded the scope of his proposal, stating that "[t]he prohibitions in this section shall not apply to subscribers or members of their family who perform the acts prohibited in this section in their homes or places of business." Minutes, Senate Committee on Judiciary, SB 165, Apr. 22, 1955, 1. The record does not include any explanation for the proposed amendment or any discussion of it, beyond the suggestion that the reference to "places of business" be deleted. Id. With that slight revision, SB 165 was reported out of committee with a do-pass recommendation. Id. The House Committee on Judiciary approved the bill without discussion. Minutes, House Committee on Judiciary, SB 165, May 2, 1955, 1. The legislature enacted the bill as amended.
*102 Four years later, the legislature amended ORS 165.540 to add what is now paragraph (c), extending the prohibition to "conversations," defined as communications other than telecommunications and radio communications. Or. Laws 1959, ch. 681, § 2. The new law also moved the homeowner's exception to a separate section, what is now ORS 165.540(3), and stated that the homeowner's exception applies to the prohibitions in subsection (1), which necessarily included obtaining or attempting to obtain conversations other than telecommunications or radio communications.[1] Id. The legislative history includes no other information about the source of the amendment or its intended effect.
Thus, the legislative history sheds little, if any, light on the issue before us. It shows that the legislature *290 originally prohibited obtaining a telecommunication or radio communication without the permission of at least one party, and it fashioned an exception for telecommunication or radio communication subscribers or their families for such conduct "in their homes." Four years later, the legislature extended the prohibition to obtaining or attempting to obtain "conversations" other than telecommunications and radio communications; as a result, the exception was necessarily extended to apply to the new prohibition. Nothing in the legislative history addresses the question whether the exception in what is now ORS 165.540(3) applies only when the conversation itself entirely takes place in the subscriber's home.
Defendant insists that the legislative history at least suggests the legislature's intention "to allow a subscriber to listen to or record communication that occurs on telephone lines within their own home." It follows, she asserts, "that the conversations must also occur in their own home."
Defendant's reading of the legislative history, however, relies on a measure of question begging; it assumes that a telecommunication or radio communication that a subscriber listens to or records in the home occurs in the home. In fact, the telecommunication or radio communication just as easily-and much more likely-involves at least one party who is not in the home. What the subscriber hears or records certainly occurs in the home. But that is no different from what happened in this case, in which what Quiros heard and recorded occurred in her home.
Even assuming for the sake of argument that defendant is correct in inferring that the legislature's purpose in adopting what is now ORS 165.540(3) was to allow homeowners to record conversations that occur in their homes, her assertion that the exception must be limited to those circumstances is untenable for at least two reasons.
First, the fact that a specific concern precipitated a given statute does not necessarily mean that the legislature intended the statute to apply only to that specific concern. It is very common for the legislature to respond to a *291 specific problem by enacting a statute containing wording broad enough to address more than the specific problem that prompted it. As the Supreme Court explained in South Beach Marina, Inc. v. Dept. of Rev. , 301 Or. 524, 531, 724 P.2d 788 (1986), "Statutes ordinarily are drafted in order to address some known or identifiable problem * * *. The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention." See also State v. Dickerson , 356 Or. 822, 831-32, 345 P.3d 447 (2015) (although a narrow problem precipitated legislation, broader wording was adopted to address that problem); Comcast Corp. v. Dept. of Rev. , 356 Or. 282, 306-07, 337 P.3d 768 (2014) ("[T]he legislature addressed a particular precipitating concern * * * with a broader policy choice."). That certainly appears to be the case in this instance, in which the wording that the legislature enacted as ORS 165.540(3) is not as narrow as the problem that defendant contends precipitated it.
Second, and aside from that, whatever the legislative history may show the legislature intended by the enactment of a *103 statute, the wording ultimately enacted must be capable of carrying out that intention. If the legislature's intentions as revealed in legislative history do not find expression in the actual wording of the statute, that legislative history is entitled to "no weight." Gaines , 346 Or. at 173, 206 P.3d 1042 ; see also Monaco v. U.S. Fidelity & Guar. , 275 Or. 183, 188, 550 P.2d 422 (1976) ("Whatever the legislative history of an act may indicate, it is for the legislature to translate its intent into operational language. This court cannot correct clear and unambiguous language for the legislature so as to better serve what the court feels was, or should have been, the legislature's intent."). In this case, defendant does not explain-and we do not understand-how the wording of ORS 165.540(3) reasonably can be construed to limit the exception to conversations occurring in the home. As we have noted, the statute provides that what is excepted is "the acts prohibited in subsection (1)" of ORS 165.540. And the only acts prohibited in that subsection are obtaining or attempting to obtain the contents of a conversation without knowledge or permission. *292 We conclude that the trial court did not err in denying defendant's motion to exclude the recording of her conversation with Coleman.
Affirmed.

In 1961-two more years later-the legislature changed the wording of the homeowner's exception so that it expressly refers to paragraphs (a), (b), and (c) of subsection (1), rather than simply referring to subsection (1) generally. Or. Laws 1961, ch. 960, § 1.