Argued and submitted December 3, 2018, affirmed September 16, 2020

In the Matter of the Marriage of

Thomas J. GARLAND,
*Petitioner-Respondent,*
*and*

Katrina J. GARLAND,
*Respondent-Appellant.*

Josephine County Circuit Court
08DR0227; A165677

475 P3d 105

Mother appeals from a supplemental judgment awarding custody of her minor children to father, raising three assignments of error. In her second assignment of error, mother contends that the trial court erroneously excluded evidence of telephonic and in-person conversations between father and their children, which mother had surreptitiously recorded using her home telephone, an invisible application she had installed on a cell phone, and a handheld recording device she hid in her son's backpack. *Held*: The trial court improperly excluded some, but not all, of the recordings, but mother has failed to establish that any evidentiary error was harmful.

Affirmed.

Pat Wolke, Judge.

Stefanie L. Burke argued the cause for appellant. Also on the briefs were Melisa A. Button and Hornecker Cowling LLP.

Frank C. Rote, III, argued the cause for respondent. Also on the brief was Law Office of Frank C. Rote, III.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

Mother appeals from a supplemental judgment awarding custody of her minor children to father, raising three assignments of error. We reject mother's first and third assignments of error, writing here to address only her second assignment of error, in which mother contends that the court erroneously excluded audio recorded conversations between father and their children. Organizationally, those conversations can be divided into four categories: (1) telephonic conversations between father and the children on mother's landline home phone; (2) telephonic conversations that occurred within mother's home, between father and the children, that occurred on a cellphone that mother owned, but the daughter used; (3) telephonic conversations that occurred outside mother's home, between father and the children, on a cellphone that mother owned, but the daughter used; and (4) in-person conversations between father and the children that occurred outside mother's home, captured by listening software secretly installed by mother on the daughter's cellphone, in conjunction with a recording device planted in the son's backpack. The trial court concluded that all of those recordings were obtained in violation of ORS 165.540, and therefore inadmissible pursuant to ORS 165.540(1)(e), which prohibits a person from "us[ing] or attempt[ing] to use, *** any conversation, telecommunication or radio communication obtained by any means prohibited by this section." We conclude that the trial court improperly excluded some, but not all, of the recordings, but that mother has failed to establish that any evidentiary error was harmful. Accordingly, we affirm.

Although mother requests *de novo* review, and despite father's conflicting requests, initially for, and later against, *de novo* review in his brief, this is not an "exceptional" case that warrants such review. *See* ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"). We describe the facts in a manner consistent with the trial court's express findings and those implicit in its rulings, which the record supports. *State v. Rosales*, 291 Or App 762, 764, 423 P3d 112 (2018). A detailed recitation of the extensive record of substantive

facts would not benefit the bar or public. Rather, the procedural facts are set forth below.

Mother brings this appeal after custody was awarded to father, the most recent ruling in an extended custody battle with father, spanning more than a decade, beginning when their children were three and six years old. This dispute began with the parties' stipulated dissolution of marriage in 2008, after which the parties were awarded joint physical and legal custody, including a 50/50 parenting plan. After some informal changes to the parenting plan between 2008 and 2011, both parties filed motions in 2012 seeking full custody, and, after a variety of delays, the court granted sole custody to mother in 2013, subject to father's parenting-time arrangements. In 2014, father again filed a motion to modify the custody arrangement and parenting plan. A variety of additional delays postponed the trial for nearly two years, including motions from both parties requesting temporary emergency modifications to custody for immediate danger, which were both denied.

The trial took place over a period of nearly one year. Mother presented evidence that father was engaged in alienating the children from her. Additionally, she sought to introduce evidence of audio recordings of telephone and in-person conversations between father and the children, which, although obtained by mother without the children's or father's knowledge or consent, mother asserted, would provide additional evidence of father's persistent attempts to alienate the children. Mother recorded the telephone conversations using a device connected to her home phone and a hidden application mother installed on the daughter's cell phone, which mother owned. The in-person conversations were recorded using the hidden application on the daughter's cell phone and a handheld audio recording device mother placed in the son's backpack.

The trial court ruled that all the in-person recordings were inadmissible. The trial court also ruled that the telephone conversations recorded using the daughter's cell phone were inadmissible, and that recordings using mother's home phone were admissible if the vicarious consent doctrine applied. To show that the vicarious consent doctrine

applied, the court required mother to prove that her actions were motivated by a reasonable concern as to the well-being of the children.

Despite the court's specific ruling disallowing most of the recordings and requiring proof of mother's state of mind in recording the home phone conversations, mother's counsel discussed the contents of all of the recordings in her written memoranda and argument—a discussion that the trial court admonished counsel for including.[1] The trial court was unpersuaded by mother's proof of her state of mind, noting counsel's "bad faith" disclosure of the contents of the recordings, and, in a supplemental judgment incorporating its three letter opinions, the court awarded custody to father, subject to mother's parenting time. The court also awarded attorney fees to father, explaining that the court "believe[d] that [mother] has acted in bad faith, therefore reasonable attorney fees are awarded to [father] pursuant to ORCP 68."

Mother now appeals from that supplemental judgment, asserting in her second assignment of error that the trial court erred as a matter of law when it ruled that all of the audio recordings were inadmissible. Specifically, she asserts that the recordings made on her home phone were permitted under the ORS 165.540(3) residence exception to ORS 165.540(1), which, contrary to the trial court's ruling, did not require her to prove her reasons for recording them. With respect to the in-person conversations and the telephone conversations recorded on the daughter's cell phone, mother argues that the recordings should have been permitted under the doctrine of vicarious consent. Father argues that all of the recordings were illegally made in violation of ORS 165.540(1) and, thus, are inadmissible under ORS 41.910. Father does not address the residence exception under ORS 165.540(3).

To the extent that mother's arguments on appeal challenge the legal bases for the trial court's evidentiary rulings, *e.g.*, its interpretation of the statutes governing

---

[1] The actual content of the telephone calls, however, was not put into the record in the form of an offer of proof.

admissibility of surreptitiously recorded conversations, we review those rulings for legal error. *Yoshida's Inc. v. Dunn Carney Allen Higgins & Tongue*, 272 Or App 436, 443, 356 P3d 121 (2015), *rev den*, 358 Or 794 (2016).

Subject to certain exceptions, ORS 165.540 prohibits "the interception of a private conversation unless all parties to the conversation are informed that their conversation is being recorded." *State v. Evensen*, 298 Or App 294, 300, 447 P3d 23, *rev den*, 366 Or 64 (2019) (internal citation omitted). As relevant here, ORS 165.540(1) makes it unlawful to:

> "(a)   Obtain or attempt to obtain the whole or any part of a *telecommunication* or a radio communication to which the person is not a participant, by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless *consent* is given by at least one participant.
>
> "* * * * *
>
> "(c)   Obtain or attempt to obtain the whole or any part of a *conversation* by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if not all participants in the conversation are specifically *informed* that their conversation is being obtained."

ORS 165.540(1) (emphases added).

Subsection (3) of the statute describes the residence exception:

> "The prohibitions in subsection (1)(a), (b) or (c) of this section do not apply to subscribers or members of their family who perform the acts prohibited in subsection (1) of this section in their homes."

ORS 165.540(3). Father does not contest that mother is a "subscriber" for purposes of her landline home phone or the cellphone used by the daughter.

Although our decisions addressing the meaning of the residence exception under ORS 165.540(3) are limited, we have previously addressed at length its legislative history in *Eversen*, 298 Or App at 301-09 and *State v. Rainey*,

294 Or App 284, 288-90 431 P3d 98 (2018) and need not repeat that exercise here. As we noted in those cases, the legislative history sheds little light on the legislative intent of ORS 165.540(3). *Id.* Thus, "in the absence of context or legislative history that persuades us that the legislature intended something different, we conclude that we should interpret ORS 165.540(3) in the way most faithful to the statutory text." *Evensen*, 298 Or App at 310; *see Rainey*, 294 Or App at 291 (construing ORS 165.540(3) according to its "actual wording").

By the text of the statute, the crux of the residence exception is not the location where the conversation itself took place, but rather, the location of the performance of the act of recording.

> "What must occur 'in their homes' are 'the acts prohibited in subsection (1).' The only acts prohibited in subsection (1) are recording or listening to—'[o]btain[ing] \*\*\* by means of any device, contrivance, machine or apparatus'— without notice. Nothing in the wording of ORS 165.540(3) can be plausibly read to state an exception based on where the conversation itself takes place."

*Rainey*, 294 Or App at 288 (quoting ORS 165.540) (brackets and omission in *Rainey*). Thus, when a conversation or a telecommunication is recorded in a subscriber's home, it does not violate ORS 165.540(1).

We first address the telephonic conversations. Calls recorded using mother's landline home phone are clearly permitted under the residence exception because the act of capturing the conversation occurred within the home. Similarly, calls recorded on the cellphone for which mother was a subscriber, even though the phone was used by the daughter, when the cellphone was physically located within mother's home, were authorized under ORS 165.540(3). Again, there, the act of capturing the conversation took place within the home. The trial court erred in excluding those calls.

The residence exception, however, does not apply to conversations captured outside the home. Here, some telephonic conversations between father and the children occurred on the daughter's cellphone at a time when the

daughter and the phone were not in mother's house. Axiomatically, the recording application installed by mother captured those conversations *outside* the home. Accordingly, the terms of the residence exception are inapplicable in such a circumstance.

Nevertheless, mother asserts that the cell phone of a minor child should be treated as the home phone of a custodial parent, thus allowing the recordings under the residence exception, regardless of the cellphone's physical location when the call took place because "ORS 165.540 was enacted, and subsequent cases decided, before cell phones became as ubiquitous as they are today. In many households, cell phones are the only telephones in use." Even acknowledging the evolving definition of home telephones, however, that argument conflicts with the text of ORS 165.540(3), which states that the dispositive factor of the residence exception is whether the act of recording was done inside the home.

Because the residence exception does not apply to telephonic conversations captured while the capturing cell phone was physically located outside the home, mother is bound by the prohibitions in ORS 165.540(1)(a), requiring at least one of the parties to consent to telephone conversation recording. Mother does not argue on appeal that father or the children consented to recording their telephone conversations when mother began the recordings, and the record is insufficient to support that finding. Rather, when mother began recording father and the children, none of them knew of the recording, nor consented to it. Accordingly, the trial court correctly excluded such conversations.

We turn now to the in-person conversations. Mother correctly acknowledges that, under ORS 165.540(1), all the parties to the conversation must be aware it is being recorded. Further, mother does not argue that either father, or the children, knew they were being recorded. Rather, mother asserts that her knowledge of the recording should vicariously extend to her children. Mother acknowledges that Oregon has not recognized vicarious knowledge or consent for purposes of recording conversations on behalf of a minor child, but she offers authority from outside Oregon

applying vicarious consent in this context. *See, e.g.*, *Pollock v. Pollock*, 154 F3d 601 (6th Cir 1998); *In re Trever P.*, 14 Cal App 5th 486, 221 Cal Rptr 3d 871, *rev den*, Nov 15, 2017. We are unpersuaded by the authority provided. The Oregon legislature has not created an exception to ORS 165.540 that would permit mother to use recordings obtained in violation of that statute on claim of a good faith concern over the best interests of the children. It is not our role to "insert what has been omitted, or *** omit what has been inserted." ORS 174.010.

The remaining question is whether the error in excluding the legally obtained recordings requires reversal. We will not reverse based on evidentiary error unless that error affected the substantial rights of the parties. OEC 103(1) ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and: *** (b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."). When analyzing whether an error is harmless, we consider whether there is little likelihood that the particular error would have affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). "Generally, when a trial court excludes testimony, a party must make an offer of proof if the party later wants to assign error to that ruling." *State v. Babson*, 355 Or 383, 412, 326 P3d 559 (2014). "The rule does not apply when an offer of proof is impossible because of a trial court's refusal to allow the offer of proof to be made." *Id.* at 413 (internal quotation marks and citation omitted).

Critically, it is the burden of the appellant to establish that evidentiary error is harmful.

> "Evidentiary error is not presumed prejudicial, and the burden is on [the party] who appeals *** to show that a court's error affected a substantial right."

*State v. Kayfes*, 213 Or App 543, 555, 162 P3d 308, *rev den*, 343 Or 690 (2007); *State v. Ambriz-Arguello*, 285 Or App 583, 589, 397 P3d 547, *rev den*, 362 Or 39 (2017) (holding same).

On this record, we cannot conclude that appellant has met her burden to establish that the evidentiary error as to some of the calls was prejudicial. The entirety of mother's argument on appeal as to harm consists of two sentences: "If even some of the recordings were allowed into evidence, or mother were allowed to testify to them, then this would have materially changed the outcome of the case. Mother would have been able to present overwhelming evidence that father had engaged in alienating the children against her." Mother asserts that admission of the recordings would have changed the outcome but offers no explanation as to *how*. The full contents of the recordings are not preserved in the record, via a traditional offer of proof, for appellate review, although some of the contents can be discerned from various court filings. Whatever those contents, it is apparent that exclusion of the calls did not prohibit mother from raising claims of alienation at trial. Mother herself acknowledges in her brief that the trial record establishes "substantial evidence that Father was engaged in alienating behaviors."

On appeal, mother offers no argument about how the erroneously excluded evidence would have materially altered the result in the face of that other "substantial evidence" on the same point. That problem/deficiency is compounded by our conclusion that only some, not all, of the recordings were admissible. Further, the trial court itself did not discount that alienation may have occurred. The trial court's opinion letter quoted with approval the testimony of one expert:

> "It is impossible to rule out of the possibility of alienation of the children by [father]. As discussed above, it is possible that he is engaged in this process, in a covert and potentially unconscious way. Yet, in the opinion of this evaluator, given all the data in the situation, it is more likely that both parents speak badly of the other in times of stress, and that the children's upset with their mother has its roots more in the kids' upset with her behavior than in [father]'s alienation."

Given that the trial court's ultimate custody determination was made even while acknowledging that it was "impossible to rule out" alienation, mother fails to explain how

admission of *additional* evidence of alienation would likely have affected that determination.

Ultimately, it is not the function of an appellate court to "make or develop a party's argument when that party has not endeavored to do so itself." *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003). Here, based on the limited arguments advanced, we are unpersuaded that any error in excluding some of the recordings in this case overcomes our constitutional obligation under Article VII (Amended), section 3, of the Oregon Constitution, to affirm notwithstanding any evidentiary error when there is little likelihood that the error affected the outcome.

Affirmed.